IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ERICA BUTLER, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | Civil Action No. 3:25-CV-0065-D |
| § | |
| OUR COMMUNITY OUR KIDS and § | |
| ACH CHILD AND FAMILY SERVICES, § | |
| § | |
| Defendants. § | |

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff Erica Butler ("Butler") alleging discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. 2000e2(a)(1) and 42 U.S.C. 1981 and tortious interference with a business relationship, defendant ACH Child and Family Services ("ACH") moves to dismiss Butler's claims and to transfer the case to the Fort Worth Division of the Northern District of Texas. For the reasons that follow, the court denies the motion to transfer, grants in part and denies in part the motion to dismiss, and grants Butler leave to replead.

I

Butler, an African American woman, began working as a Permanency Director for Our Community Our Kids ("OCOK"),[1] a division of ACH Child and Family Services

---

[1] Butler has not served OCOK, and, in response to a court order regarding the failure to effect service, has filed a motion for an extension of time to do so. In an electronic order filed today, the court is granting Butler's alternative motion for extension of time to effect service and extending the service deadline to 14 days after the electronic order granting the

("ACH"), on February 18, 2020.² At the time she was hired, she had more than 20 years of experience working in the child welfare system. When she began her employment at OCOK, she was the only African American in management in her department. By the time she was terminated, she was still the only African American in upper management. Butler alleges that, in the latter part of 2021, there was a "shift in the environment at OCOK," which became more noticeable after Stacy Reynolds ("Reynolds") took over as Senior Permanency Director. According to Butler's complaint, the "work environment became increasingly toxic and hostile," and "[t]here was a clear display of disparate treatment and unfair practices relating to African American employees."

After Butler voiced her concerns about the work environment, OCOK Chief Operating Officer Kris Naylor ("Naylor") held a Corrective Action Plan meeting. At this meeting, based on allegations of insubordination and unsatisfactory work performance, Naylor and Reynolds decided to place Butler on paid administrative leave. Following the meeting, it became evident that the documentation upon which Naylor and Reynolds relied contained inaccuracies, and Human Resources instructed Naylor to correct the errors and amend the "Action Taken" to a First Level Warning because this was Butler's first disciplinary action.

---

motion is filed.

²The court recounts the background facts favorably to Butler as the nonmovant. In deciding a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (addressing Rule 12(b)(6) standard)).

Nevertheless, after a second meeting that relied on the same errors, OCOK terminated Butler's employment. Butler also maintains, on information and belief, that OCOK interfered with her prospective employment as a Permanency Director at another entity—Empower—where she interviewed in June 2024. The court is deciding the motions to transfer and dismiss on the briefs, without oral argument.

II

The court first addresses ACH's motion to transfer.

A

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "The decision to transfer is made to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Bank One, N.A. v. Euro-Alamo Invs., Inc.,* 211 F.Supp.2d 808, 811 (N.D. Tex. 2002) (Fitzwater, J.) (citing *Stabler v. N.Y. Times Co.*, 569 F. Supp. 1131, 1137 (S.D. Tex. 1983)). "The court cannot transfer a case where the result is merely to shift the inconvenience of the venue from one party to the other." *Sivertson v. Clinton*, 2011 WL 4100958, at *3 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.) (citing *Fowler v. Broussard*, 2001 WL 184237, at *6 (N.D. Tex. Jan. 22, 2001) (Fitzwater, J.)).

As a preliminary question, the court must decide "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG* ("*Volkswagen I*"), 371 F.3d 201, 203 (5th Cir. 2004) (per curiam).

Once the court resolves this issue, "the determination of 'convenience' turns on a number of private and public interest factors, none of which are given dispositive weight." *Id.* (citing *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004)).

The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law. *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

The moving party bears "the burden of proving by a preponderance of the evidence that transfer is appropriate." *Bank One, N.A.*, 211 F.Supp.2d at 812 (citing *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966)). "Where there is no demonstration by the movant, let alone a clear one, the [district] court cannot weigh a factor against the non-movant and in favor of transfer." *Def. Distributed v. Bruck*, 30 F.4th 414, 434 (5th Cir. 2022).

> Moreover
>
> [t]he plaintiff's choice of venue is . . . entitled to deference, and therefore the party seeking transfer has the burden to show good cause for the transfer. The burden on the movant is "significant," and for a transfer to be granted, the transferee venue must be "clearly more convenient than the venue chosen

by the plaintiff."

*AT & T Intellectual Prop. I, L.P. v. Airbiquity Inc.*, 2009 WL 774350, at *1 (N.D. Tex. Mar. 24, 2009) (Lynn, J.) (footnotes omitted) (quoting *In re Volkswagen of Am., Inc.* ("*Volkswagen II*"), 545 F.3d 304, 315 (5th Cir. 2008) (en banc)).

B

The court turns first to the preliminary question of whether this case could have been filed in the Fort Worth Division of this court. Because the actions that allegedly violated Title VII and § 1981 are alleged to have taken place in the Fort Worth Division, venue is proper in that division and therefore the case could have been filed there. *See* 42 U.S.C. § 2000e-5(f)(3); 28 U.S.C. § 1391(b).

C

The court next considers the private interest factors.

The parties agree that the factors of availability of compulsory process to secure the attendance of witnesses, cost of attendance for willing witnesses,[3] and other practical problems are neutral. As for the ease of access to proof, ACH maintains that "[a]ll of the tangible evidence relevant to this case is located in the Fort Worth Division," including

---

[3] "The availability and convenience of witnesses has been held to be the most significant factor in deciding a § 1404(a) motion to transfer." *Sw. Airlines Co. Profit Sharing 401(k) Comm. v. UBS Global Asset Mgmt. (Ams.), Inc.*, 2007 WL 268808, at *3 (N.D. Tex. Jan.29, 2007) (Fitzwater, J.) (quoting *Mannatech, Inc. v. K.Y.C., Inc.*, 2006 WL 2216033, at *3 (N.D. Tex. Aug. 3, 2006) (Solis, J.)). The convenience of non-party witnesses is accorded the greatest weight, whereas the convenience of witnesses employed by the party seeking transfer is entitled to less weight. *See Moss v. Lockheed Martin Corp.*, 2011 WL 197624, at *5 (N.D. Tex. Jan. 18, 2011) (Lynn, J.).

relevant files, personnel policies and procedures, and Butler's personnel records and documentation regarding Butler's termination. P. Br. (ECF No. 13) at 6. But considerations of accessibility and location of sources of proof are "less influential due to advances in copying technology and information storage." *Sargent v. Sun Tr. Bank, N.A.*, 2004 WL 1630081, at *4 (N.D. Tex. July 20, 2004) (Fitzwater, J.) (citing *Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757, 778 (E.D. Tex. 2000)). Moreover, there is no indication that the tangible evidence that ACH identifies is so voluminous that it cannot be transported from Fort Worth to Dallas without great difficulty, or that the parties cannot easily access electronic versions of relevant documents that are physically located in Fort Worth. This factor therefore weighs only slightly in favor of transfer.

D

The court next addresses the public interest factors. The parties agree that the factors of administrative difficulties flowing from court congestion, familiarity of the forum with the law that will govern the case, and avoidance of unnecessary problems of conflict of law of the application of foreign law are all neutral. On the issue of the local interest in having localized issues decided at home, ACH maintains that the Fort Worth Division has an interest in deciding this case because Butler complains of wrongdoing occurring during her employment with ACH in the Fort Worth Division, and every individual accused of wrongdoing was working in the Fort Worth Division. Butler maintains that, because she is a Dallas resident, the Dallas Division has a localized interest in deciding issues pertaining to potential discrimination against one of its residents. Because both divisions have a local

interest in this dispute, this factor is neutral. *See, e.g.*, *Seeberger Enters., Inc. v. Mike Thompson Recreational Vehicles, Inc.*, 502 F.Supp.2d 531, 541 (W.D. Tex. 2007) ("[T]he Court finds that both California and Texas have an interest in the resolution of claims involving local residents and businesses."); *Ramirez v. Plains All Am. GP, LLC*, 2022 WL 607879, at *7 (W.D. Tex. Mar. 1, 2022) (finding the local interest factor neutral when, "[w]hile the citizens in the Midland Division have an interest in ensuring their businesses do not discriminate against their employees on prohibited grounds, simultaneously the citizens of the Pecos Division possess a contradistinctive interest in preventing discrimination against their residents by Midland- or Houston-based businesses").

E

ACH has shown that one private interest factor—the ease of access to proof— slightly weighs in favor of transfer, and that the remaining private and public interest factors are neutral. ACH has not carried its burden to show that the Fort Worth Division is a "clearly more convenient venue" than the Dallas Division. To transfer the case to the Fort Worth Division from the Dallas Division, in which Butler resides and chose to file her suit, would merely shift the inconvenience of the venue from ACH to Butler. The court therefore denies ACH's motion to transfer the case to the Fort Worth Division.

III

The court turns next to ACH's motion to dismiss for failure to state a claim on which relief can be granted.

A

"In deciding a [Fed. R. Civ. P.] 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the plaintiff's] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (brackets omitted).  "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

B

ACH maintains that Butler has failed to state plausible race discrimination claims because she has failed to allege facts that demonstrate that she was treated less favorably than other similarly situated employees outside her protected group. Butler responds that she has alleged sufficient facts to plead plausible claims .

1

Title VII prohibits discrimination on the basis of "race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). When a plaintiff alleges a Title VII or § 1981 claim of race discrimination based on circumstantial evidence, as Butler does, the court can use the *McDonnell Douglas* framework as a reference when determining whether the plaintiff has plausibly alleged the ultimate elements of her claim.[4] Under this framework, a plaintiff must

---

[4]The familiar *McDonnell Douglas* standard for evaluating employment discrimination claims is an evidentiary framework, not a pleading standard. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). Accordingly, "a plaintiff need not make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz*, 534 U.S. at 510-12); *see also Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (per curiam) ("Although Chhim did not have to submit evidence to establish a prima facie case of discrimination at this stage, he had to plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible."). To survive ACH's motion to dismiss, however, Butler must plausibly plead the ultimate elements of her Title VII claims. *See Chhim*, 836 F.3d at 470. And since *McDonnell Douglas* will govern when a plaintiff relies on indirect evidence of discrimination, it can be helpful to reference that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of her claim. *See Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (Title VII case) ("If a plaintiff's . . . claim depends on circumstantial evidence, he will 'ultimately have to show' that he can satisfy the *McDonnell Douglas*

sufficiently plead that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) others similarly situated but outside her protected class were treated more favorably. *See, e.g.*, *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997-98 (5th Cir. 2022).

2

Butler has not pleaded a plausible Title VII or § 1981 claim for race-based discrimination. Butler has plausibly alleged the first three elements of her discrimination claim. But she alleges no facts that enable the court to draw the reasonable inference that others similarly situated outside her protected group were treated more favorably. Butler makes several conclusory allegations about how she "was made to adhere to a different set of work rules than her white counterparts," how she was "berated and ridiculed in a manner that was not applied to her non-African American counterparts," and how, when unspecified "similar allegations" about issues with cases on which OCOK relied in deciding to terminate Butler were made "against Mrs. Butler's white counterparts, they were not reprimanded in the same way–or at all." But at no point does she identify specific similarly situated individuals outside her protected group who were treated differently, nor does she elaborate on any specific incidents to support her conclusory assertions about the disparate treatment. Butler has therefore failed to allege any factual content that, if taken as true, would give rise

---

framework. In such cases, we have said that it can be 'helpful to reference' that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the . . . claim." (quoting *Chhim*, 836 F.3d at 470-71)).

to a plausible allegation of discrimination. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (citations omitted)); *Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 600 (5th Cir. 2021) (affirming dismissal of claim when there was no allegation that any individual outside the protected group "with a similar job and supervisor and who engaged in the same conduct . . . received more favorable treatment"). Accordingly, the court dismisses Butler's Title VII and § 1981 race discrimination claims.[5]

C

ACH contends that Butler has failed to state a claim for harassment or hostile work environment because her allegations are vague and conclusory, and she pleads no facts to support the conclusory allegations. Butler responds that she has sufficiently pleaded these claims.[6]

1

"A hostile work environment exists 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

---

[5] In her response, Butler only addresses her discrimination claim, not her harassment or hostile environment claim.

[6] Because it is not evident how Butler's harassment claim differs from her hostile work environment claim (for which she must plead and ultimately prove that she was subjected to unwelcome harassment), the court considers them as one claim rather than two.

- 11 -

environment.'" *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)). Generally, to establish a prima facie case of a hostile work environment based on race, a plaintiff must show the following:

> (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citations omitted). "Harassment is based on race if 'the complained-of conduct had a racial character or purpose.'" *King v. Enter. Leasing Co. of DFW*, 2007 WL 2005541, at *10 (N.D. Tex. July 11, 2007) (Fitzwater, J.) (quoting *Harris-Childs v. Medco Health Sols, Inc.*, 2005 WL 562720, at *6 (N.D. Tex. Mar. 10, 2005) (Means, J.)). A plaintiff must demonstrate a "connection between the allegedly harassing incidents and [her] protected status." *Id.* (alteration in original) (citation omitted). "For harassment on the basis of race to affect a term, condition, or privilege of employment . . . it must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Ramsey*, 286 F.3d at 268 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

2

Butler has plausibly alleged facts to support the assertion that she belongs to a protected group. But she has not alleged facts to support any of the remaining elements of

a hostile work environment claim. As with her discrimination claim, her assertions are conclusory and unsupported, without any factual details or specific incidents of alleged harassment to support the conclusions. They are therefore insufficient to plausibly allege that she was subjected to unwelcome harassment or that any such harassment was based on race. These allegations include the following: that "[t]he work environment became increasingly toxic and hostile[,]" Compl. (ECF No. 1) ¶ 13; that Butler "experienced a workplace environment at OCOK that was rife with racial discrimination and hostility[,]" Compl. (ECF No. 1) ¶ 18; that Butler was "constantly subjected to hostile approaches by her upper reports," Compl. (ECF No. 1) ¶ 20; and that Butler was "berated and ridiculed in a manner that was not applied to her non-African American [c]ounterparts," Compl. (ECF No. 1) ¶ 20. Accordingly, the court dismisses Butler's hostile work environment claim.

D

ACH contends that Butler has failed to state claims for retaliation under Title VII and § 1981 because she does not adequately plead protected conduct or a causal connection between the alleged protected conduct and adverse action. Butler responds that she has alleged that she engaged in protected conduct and that the temporal proximity between her protected conduct and her termination is sufficient to plausibly allege causation.

1

To state a claim for retaliation under Title VII or § 1981, Butler must allege sufficient factual content that, if true, would show "(i) [s]he engaged in a protected activity; (ii) an adverse employment action occurred; and (iii) a causal link exists between the protected

activity and the adverse employment action." *Wantou v. Wal-Mart Stores Texas, L.L.C.*, 23 F.4th 422, 436-37 (5th Cir. 2022). "[C]ases that accept mere temporal proximity . . . as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citation omitted).

2

Butler first alleges, without any supporting factual allegations, that when she "advocated for herself and or her team, OCOK retaliated by changing her work assignments, giving her a 'Director Coach,' and requiring her to shadow her daily. And ultimately terminated her employment[.]" Compl. (ECF No. 1) at ¶ 19. Butler does not allege basic facts about how she "advocated for herself and or her team," the contents of such advocacy, or to whom she allegedly did so. This allegation therefore lacks sufficient factual content to plausibly allege that she engaged in protected conduct.

Butler does plausibly plead that she engaged in protected conduct based on an August 31, 2022 discussion with Human Resources after one of her supervisors' formal complaints about workplace disparities. The complaint alleges that Butler "raised her own concerns about a hostile work environment, disparate treatment, and unfair employment practices, including subjective criticism and race-based assignments[,]" Compl. (ECF No. 1) ¶ 22, and that, "[w]ithin three months of Mrs. Butler's complaint, she was placed on administrative leave and ultimately terminated[,]" Compl. (ECF No. 1) ¶ 23. ACH does not argue that the three-month period that elapsed between when she made her complaint and when she was

placed on administrative leave is insufficient temporal proximity to plausibly allege a causal link between the protected activity and the adverse employment action. The court therefore concludes that Butler has plausibly pleaded a claim for retaliation under Title VII and § 1981, and it denies ACH's motion to dismiss this claim.

E

ACH contends next that Butler failed to state a claim for relief for interference with a business relationship because she does not allege facts supporting the elements of the claim. Butler responds that she has alleged sufficient facts to support each element of her claim for tortious interference with her prospective employment with a third party.

1

To state a claim for interference with prospective business relations, Butler must plausibly plead (1) that there was a reasonable probability that she would have entered a contractual relationship with a third party; (2) that ACH committed an independently tortious or unlawful act that prevented the contract from being formed; (3) that ACH's tort was committed with a conscious desire to prevent the formation of the contract, or substantial certainty that the act would prevent the formation of the contract; and (4) that Butler suffered actual harm as a result. *See, e.g.*, *Johnson v. Baylor Univ.*, 188 S.W.3d 296, 304 (Tex. App. 2006, pet. denied) (citing *Ash v. Hack Branch Distrib. Co.*, 54 S.W.3d 401, 414-15 (Tex. App. 2001, pet. denied)). "Independently tortious" means conduct that would violate some other recognized tort duty "that is already recognized to be wrongful under the common law or by statute." *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex. 2001).

2

Butler contends that there was a reasonable probability that she would have been hired by Empower because she was a highly qualified candidate and she participated in two interviews for the position. But Butler alleges no factual content to explain or support this assertion that she was a highly qualified candidate.

Even assuming *arguendo* that she has sufficiently pleaded a reasonable probability that a contract would be formed, Butler alleges no facts to enable the court to draw the reasonable inference that ACH committed any independently tortious act that prevented such a contract from being formed, that ACH acted with the conscious desire to prevent such a contract from being formed, or that any allegedly tortious act caused Butler actual harm. Although Butler alleges that ACH discriminated and retaliated against her, she pleads no facts to support the conclusion that the actions of which she complains either prevented her from gaining employment with Empower or were committed with the intention of preventing her from securing this employment. Aside from her general allegations that she was discriminated against based on her race or that she was retaliated against for her complaints about the alleged discrimination, Butler does not plead the specific actions that she alleges were independently tortious and intended to interfere with her prospective employment. She maintains that Naylor, the former OCOK executive who was involved in Butler's termination, was later employed as the Chief Programs Officer at Empower, and that this gives rise to the reasonable inference that ACH's unspecified "conduct" was "intentional and calculated to undermine [Butler's] opportunity with Empower." P. Resp. (ECF No. 16) at

7. The court disagrees that Naylor's employment as Chief Programs Officer at Empower is sufficient of itself to give rise to such an inference. Butler has therefore failed to state a plausible claim for tortious interference with a business relationship, and the court therefore dismisses this claim without prejudice.

IV

Although the court is granting in part ACH's motion to dismiss, it will permit Butler to replead. *See In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002))). There is no indication that Butler cannot, or is unwilling to, cure the defects in her complaint. The court therefore grants Butler 28 days from the date this memorandum opinion and order is filed to file an amended complaint.

\* \* \*

For the reasons explained, the court denies ACH's motion to transfer this case to the Fort Worth Division, grants in part and denies in part ACH's motion to dismiss, and grants Butler 28 days from the date this memorandum opinion and order is filed to file an amended

complaint.

**SO ORDERED**.

August 22, 2025.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE