IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ERICA BUTLER, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | Civil Action No. 3:25-CV-0065-D |
| § | |
| OUR COMMUNITY OUR KIDS and § | |
| ACH CHILD AND FAMILY SERVICES, § | |
| § | |
| Defendants. § | |

MEMORANDUM OPINION
AND ORDER

The court returns to this action in which plaintiff Erica Butler ("Butler") alleges claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981 and tortious interference with a business relationship against ACH Child and Family Services ("ACH"). ACH moves to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. For the reasons that follow, the court grants ACH's Rule 12(b)(6) motion in part, and denies it in part, and grants Butler leave to replead.

I

Butler, an African American woman, began working as a Permanency Director for Our Community Our Kids ("OCOK"), a division of ACH, on February 18, 2020.[1] At the

---

[1] The court construes the amended complaint in the light most favorable to Butler as the nonmovant, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in Butler's favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

time she was hired, she had more than 20 years of experience working in the child welfare system.  Butler was the only African American director, and predominantly African American employees were staffed in her program.

According to her amended complaint ("complaint"), Butler was subjected to different standards than her White peers.  Unlike her peers, Butler was required to be in the office three times each week and have her camera on during virtual meetings, and she was not allowed to cancel meetings.  Butler also alleges that she was excluded from critical decisions, disparaged for how she managed her program, undermined through staffing reassignments, routinely ostracized from leadership social functions, and assigned difficult cases with pre-existing issues.  In August 2022 Butler voiced concerns about the work environment to Human Resources.

In December 2022 OCOK Chief Operating Officer Kris Naylor ("Naylor") and Senior Permanency Director Stacy Reynolds ("Reynolds") held a Corrective Action Plan meeting. At this meeting, based on allegations of insubordination and unsatisfactory work performance, Naylor and Reynolds decided to place Butler on paid administrative leave. Following the meeting, it became evident that the documentation on which Naylor and Reynolds relied contained inaccuracies, and Human Resources instructed Naylor to correct the errors and amend the "Action Taken" to a First Level Warning because this was Butler's first disciplinary action.  Am. Compl. (ECF No. 30) ¶ 31.  Nevertheless, after a second meeting that relied on the same errors, Butler was still placed on administrative leave.  Butler alleges that several White coworkers were not reprimanded despite having comparable

issues.

On January 23, 2023 Butler filed a "formal grievance" detailing her concerns about discrimination, bullying, and a hostile work environment. *Id.* at ¶¶ 40, 65. Two months after filing this grievance, Butler's employment was terminated. She also maintains, on information and belief, that OCOK interfered with her prospective employment as a Permanency Director at another entity—Empower—where she interviewed in June 2024.

The court has previously dismissed most of Butler's claims and granted her leave to replead. *See Butler v. Our Cmty. Our Kids (Butler I)*, 2025 WL 2432616 (N.D. Tex. Aug. 22, 2025) (Fitzwater, J.). Butler realleges claims for race discrimination, hostile work environment, retaliation, and tortious interference with a business relationship. ACH again moves to dismiss under Rule 12(b)(6) for failure to state a claim on which relief can be granted. Butler opposes the motion, which the court is deciding on the briefs, without oral argument.

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [plaintiff's amended] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

### III

The court first considers Butler's race discrimination claim under Title VII.

### A

Title VII prohibits discrimination on the basis of "race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). When a plaintiff alleges a Title VII claim of race discrimination based on circumstantial evidence, as Butler does, the court can use the *McDonnell Douglas*[2] framework as a reference when determining whether the plaintiff has

---

[2]*McDonnell Douglas Co. v. Green*, 411 U.S. 792, 802 (1973).

plausibly alleged the ultimate elements of her claim.³ Under this framework, a plaintiff must sufficiently plead that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) others similarly situated but outside her protected class were treated more favorably. *See, e.g.*, *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997-98 (5th Cir. 2022).

With the fourth element, the plaintiff must demonstrate that she was treated less favorably than other similarly situated employees under "nearly identical circumstances." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009); *see Willis v. W. Power Sports, Inc.*, 2024 WL 448354, at *2 (5th Cir. Feb. 6, 2024) (per curiam) (affirming Rule 12(b)(6) dismissal where plaintiff failed to identify comparator who "under nearly identical

---

³The familiar *McDonnell Douglas* standard for evaluating employment discrimination claims is an evidentiary framework, not a pleading standard. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). Accordingly, "a plaintiff need not make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz*, 534 U.S. at 510-12); *see also, e.g.*, *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) ("Although Chhim did not have to submit evidence to establish a prima facie case of discrimination at this stage, he had to plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible."). To survive ACH's motion to dismiss, however, Butler must plausibly plead the ultimate elements of her discrimination claim. *See Chhim*, 836 F.3d at 470. And since *McDonnell Douglas* will govern when a plaintiff relies on indirect evidence of discrimination, it can be helpful to reference that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of her claim. *See Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (Title VII case) ("If a plaintiff's . . . claim depends on circumstantial evidence, he will 'ultimately have to show' that he can satisfy the *McDonnell Douglas* framework. In such cases, we have said that it can be 'helpful to reference' that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the . . . claim." (quoting *Chhim*, 836 F.3d at 470-71)).

circumstances" was treated more favorably than he was).  Nearly identical circumstances exist "when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."  *Lee*, 574 F.3d at 260 (citations omitted). Additionally, "the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions."  *Id.*

B

ACH moves to dismiss Butler's race discrimination claim only to the extent it is premised on her placement on the Corrective Action Plan, her administrative leave, and her termination.  ACH maintains that Butler has failed to show that she was treated less favorably than other similarly situated employees outside her protected group.  Butler responds that she has identified White comparators who were treated more favorably than she.

C

The court concludes that Butler has not pleaded a plausible Title VII claim for race discrimination.  Butler alleges that her proffered comparators were her "peers" and were "Program Directors."  Am. Compl. (ECF No. 30) ¶ 15.  Yet she does not assert that her comparators had similar experience, qualifications, or shared the same supervisor or job responsibilities.  Her allegations lack factual detail and are insufficient to enable the court to draw the reasonable inference that her White coworkers were treated more favorably under

nearly identical circumstances. *See Mitchell v. Am. Paint Horse Ass'n*, 2019 WL 130447, at *2-3 (N.D. Tex. Jan. 8, 2019) (McBryde, J.) (granting motion to dismiss where plaintiff and her comparator "held the title of 'director'" but plaintiff did not allege that "they had similar experience, qualifications, or disciplinary records, or that they shared the same supervisor or job responsibilities"); *Turner v. City of Dallas, Tex.*, 2023 WL 8816400, at *3 (N.D. Tex. Dec. 19, 2023) (Godbey, C.J.) (granting motion to dismiss where plaintiff failed to allege facts "regarding the similar qualities" between herself and her comparator). Moreover, Butler alleges that she was placed on the Corrective Action Plan and administrative leave because of "unsubstantiated allegations of insubordination for not following instructions/deadlines and alleged unsatisfactory work performance." Am. Compl. (ECF No. 30) ¶ 29. She also asserts that cases flagged as having "[m]ajor [c]oncerns" were transferred to her and that the preexisting issues with these cases were "cited as grounds for her termination." *Id.* at ¶ 18. The conduct that her comparators allegedly engaged in included being involved in a child death lawsuit, receiving community protests, lying, sharing case sensitive information, and struggling with retention. These allegations, even if taken as true, do not enable the court to draw the reasonable inference that Butler engaged in conduct "nearly identical" to any one of her proffered comparators who allegedly drew dissimilar employment decisions. *See Lee*, 574 F.3d at 259-60. To the extent that Butler's race discrimination claim is premised on her placement on a Corrective Action Plan, her

administrative leave, and her ultimate termination, the court dismisses this claim.[4]

IV

The court now turns to Butler's hostile work environment claim.

A

"A hostile work environment exists 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)). Generally, to establish a prima facie case of a hostile work environment based on race, a plaintiff must show the following:

> (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citations omitted). "Harassment is based on race if 'the complained-of conduct had a racial character or purpose.'" *King v.*

---

[4]In her response brief, Butler maintains that dismissal of her "Title VII and § 1981 discrimination claims is improper." P. Resp. (ECF No. 32) 4. Her complaint, however, only alleges a race discrimination claim under Title VII. Even if Butler were to have alleged a race discrimination claim under § 1981, it would fail for the reasons already discussed. *See, e.g.*, *Butler I*, 2025 WL 2432616, at *5 (applying same standard to plaintiff's race discrimination claims under Title VII and § 1981).

*Enter. Leasing Co. of DFW*, 2007 WL 2005541, at *10 (N.D. Tex. July 11, 2007) (Fitzwater, J.) (quoting *Harris-Childs v. Medco Health Sols, Inc.*, 2005 WL 562720, at *6 (N.D. Tex. Mar. 10, 2005) (Means, J.)). A plaintiff must demonstrate a "connection between the allegedly harassing incidents and [her] protected status." *Id.* (alteration in original) (citation omitted). "For harassment on the basis of race to affect a term, condition, or privilege of employment . . . it must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Ramsey*, 286 F.3d at 268 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

B

ACH contends that Butler has failed to state a plausible hostile work environment claim because her allegations are largely vague and conclusory. Butler responds that she has sufficiently pleaded this claim.

C

The court concludes that Butler has not pleaded a plausible hostile work environment claim. Many of the alleged incidents of harassment lack factual detail or are not plausibly connected to her race. And the alleged incidents of harassment that conceivably had a racial character were not sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. Butler alleges that a supervisor stated that "[t]he only difference is I am White, and you all are Black" when observing how Reynolds spoke to Butler. Am. Compl. (ECF No. 30) ¶ 86. She also alleges that, following the death of George Floyd, Reynolds told her that she was from a "back the blue family." *Id.* at ¶ 78. But

- 9 -

these "offhand comments" and "isolated incidents" do "not amount to discriminatory changes in the 'terms and conditions of employment.'" *Lauderdale v. Tex. Dep't of Crim. Just., Inst. Div.*, 512 F.3d 157, 163 (5th Cir. 2007) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).  Likewise, Butler's allegation that, unlike her White coworkers, she was required to be in the office three times each week, have her camera on during virtual meetings, and prohibited from canceling meetings does not enable the court to draw the reasonable inference that Butler experienced a hostile work environment.  She does not allege facts to suggest that these particular work conditions were physically threatening, humiliating, or unreasonably interfered with her work performance.  *See Zavala v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 2017 WL 274133, at *4 (N.D. Tex. Jan. 20, 2017) (Fitzwater, J.) ("In determining whether a workplace constitutes a hostile work environment, courts must consider . . . whether [the conduct] is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." (citation omitted) (internal quotation marks omitted)).[5]  Accordingly, the court dismisses Butler's hostile work environment claim.

---

[5]To the extent that ACH's placement of "African American staff with 'race relation issues'" in Butler's program constitutes unwelcome harassment on the basis of her race, the court likewise concludes that Butler has not alleged facts demonstrating that this aspect of the workplace was physically threatening, humiliating, or unreasonably interfered with her work performance.  Am. Compl. (ECF No. 30) ¶ 87.

V

The court next considers Butler's retaliation claims under Title VII and § 1981.

A

To state a claim for retaliation under Title VII or § 1981, Butler must allege sufficient factual content that, if true, would show "(i) [s]he engaged in a protected activity; (ii) an adverse employment action occurred; and (iii) a causal link exists between the protected activity and the adverse employment action." *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 436-37 (5th Cir. 2022). "[C]ases that accept mere temporal proximity . . . as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (citation omitted).

B

ACH maintains that Butler's retaliation claim fails because she does not adequately plead that she engaged in protected activity on January 23, 2023. ACH also maintains that there is an absence of a causal connection between the protected activity that Butler engaged in on August 31, 2022 and her termination in March 2023.[6] Butler responds that her January 2023 complaint constitutes protected activity and that the temporal proximity between her

---

[6]ACH notes that it does not seek dismissal of Butler's retaliation claim pertaining to her placement on the Corrective Action Plan. This concession makes no difference to the court's resolution of ACH's motion to dismiss because Butler's retaliation claim appears to arise out of her administrative leave and her termination. *See* Am. Compl. (ECF No. 30) ¶ 67.

protected activity and her termination is sufficient to plausibly allege causation.

C

The court concludes that there is an absence of a causal connection between Butler's protected activity and her termination. As framed, Butler's allegation that, on January 23, 2023, she filed a grievance about discrimination, a hostile work environment, and bullying is insufficient to enable the court to draw the reasonable inference that she engaged in protected activity. *See Davis v. Dall. Indep. Sch. Dist.*, 448 Fed. Appx. 485, 493 (5th Cir. 2011) (per curiam) ("[A] vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity."); *Kirk v. Our Cmty. Our Kids*, 2025 WL 2432614, at *6 (N.D. Tex. Aug. 22, 2025) (Fitzwater, J.) (complaining of "discriminatory practices" did not "give rise to a reasonable inference that [plaintiff] engaged in protected activity"); *E.E.O.C. v. Omni Hotels Mgmt. Corp.*, 516 F. Supp. 2d 678, 705 (N.D. Tex. 2007) (Stickney, J.) ("Vague concerns and even vague assertions of discrimination are not sufficient to constitute an opposition to an unlawful employment practice."). Butler does plausibly plead that she engaged in protected activity based on the August 31, 2022 discussion with Human Resources. But a "five month lapse is not close enough" to establish a causal connection, and approximately seven months elapsed between the discussion with Human Resources and her termination. *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020).

Butler has pleaded a plausible retaliation claim arising out her placement on administrative leave. According to her complaint, Butler was placed on administrative leave

- 12 -

approximately three months after her August 2022 discussion with Human Resources. As in *Butler I*, ACH does not contend that the three-month period that elapsed between when she made her complaint and when she was placed on administrative leave is insufficient temporal proximity to plausibly allege a causal link between the protected activity and the adverse employment action. *See Butler I*, 2025 WL 2432616, at *6. The court therefore denies ACH's motion to dismiss Butler's retaliation claim.

VI

The court now considers Butler's claim for relief for interference with a business relationship.

A

To state a claim for interference with prospective business relations, Butler must plausibly plead

> (1) that there was a reasonable probability that she would have entered a contractual relationship with a third party; (2) that ACH committed an independently tortious or unlawful act that prevented the contract from being formed; (3) that ACH's tort was committed with a conscious desire to prevent the formation of the contract, or substantial certainty that the act would prevent the formation of the contract; and (4) that Butler suffered actual harm as a result.

*Butler I*, 2025 WL 2432616, at *6 (citing *Johnson v. Baylor Univ.*, 188 S.W.3d 296, 304 (Tex. App. 2006, pet. denied)). "Independently tortious" means conduct that would violate some other recognized tort duty "that is already recognized to be wrongful under the common law or by statute." *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex.

- 13 -

2001).

B

ACH contends that Butler has failed to cure the deficiencies the court identified in *Butler I*. Butler responds that she has alleged sufficient facts to support her claim.

C

In *Butler I* the court concluded that, even assuming that Butler had sufficiently pleaded a reasonable probability that a contract would be formed, she had alleged no facts to enable the court to draw the reasonable inference that ACH committed any independently tortious act that prevented such a contract from being formed or that ACH acted with the conscious desire to prevent such a contract from being formed. *Butler I*, 2025 WL 2432616, at *7. The court reaches the same conclusion here. Butler asserts that, on information and belief, ACH "provided negative and false information about [her] to Empower." Am. Compl. (ECF No. 30) ¶ 116. She does not, however, allege factual details to support this assertion. Butler also asserts that she was discriminated against based on her race and that she was retaliated against for her complaints about the alleged discrimination. Yet she does not plead facts to suggest that these actions either prevented her from gaining employment with Empower or were committed with the intention of preventing her from securing this employment. Finally, Butler asserts that Naylor, the former OCOK executive who was involved in Butler's termination, was later employed as the Chief Programs Officer at Empower, and that this gives rise to the reasonable inference "that Naylor shared negative or false information about [Butler]." P. Resp. (ECF No. 32) 7. The court disagrees that

Naylor's mere employment at Empower is sufficient to give rise to such an inference. And even if it did, this inference would not enable the court to draw the reasonable inference that ACH (as opposed to Naylor) committed an independently tortious or unlawful act. Because Butler has failed to state a plausible claim for tortious interference with a business relationship, the court dismisses this claim. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (alteration in original) (citations omitted)).

## VII

Although the court is dismissing nearly all of Butler's claims and has already afforded her one opportunity to replead, it will again grant her leave to amend. *See, e.g.*, *Reneker v. Offill*, 2010 WL 1541350, at *2, 7 (N.D. Tex. Apr. 19, 2010) (Fitzwater, C.J.) (concluding, after twice granting motions to dismiss, that plaintiff's second amended complaint stated claim on which relief could be granted).

\* \* \*

For the reasons explained, the court grants in part and denies in part ACH's motion to dismiss, and grants Butler 28 days from the date this memorandum opinion and order is

filed to file her second amended complaint.

**SO ORDERED**.

December 17, 2025.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE